**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| GEORGE WEST 59 INVESTMENT, INC., | § | No. 13-34815-SGJ-11 |
| | § | (Chapter 11) |
| Debtor, | § | |

| | | |
|---|---|---|
| GEORGE WEST 59 INVESTMENT, INC., | § | Adversary No. 13-03223 |
| | § | |
| | § | |
| Plaintiff, | § | Civ. No. 3:14-CV-1336-M |
| | § | |
| v. | § | |
| | § | |
| JAMES RUSSELL WILLIAMS, MING | § | |
| CHU CHANG, and AMERICAN FIRST | § | |
| NATIONAL BANK, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

The above-referenced adversary proceeding (the "Adversary Proceeding") was filed on

October 18, 2013—soon after the entity known as George West 59 Investment, Inc. ("George

West" or "Plaintiff/Debtor") filed a voluntary Chapter 11 bankruptcy case (the "Bankruptcy

Case") on September 19, 2013. The Adversary Proceeding seeks to resolve ownership disputes

and controversies regarding certain real property operated as a truck stop and convenience store

at 101 S. Nueces St, in the town of George West, Live Oak County, Texas (the "Real Property").

It is undisputed that the Plaintiff/Debtor has, at all relevant times, had legal title to the Real

Property and controlled it as its primary asset.[1]  The Defendant James Russell Williams

---

[1] The Court takes judicial notice that the Real Property was listed on Plaintiff/Debtor's Bankruptcy Schedule A filed
in the Bankruptcy Case as having a value of $750,000 and was shown to be subject to secured debt in the amount of
$290,641.23; additionally, the Plaintiff/Debtor's Schedule G indicated that there are two tenants with commercial

("Defendant/Williams") contends that he purchased the Real Property in an alleged prepetition, non-judicial foreclosure sale of the Real Property, although legal title, possession, and control of the Real Property were never delivered to him and no party ever received the consideration he was prepared to tender.  Two additional defendants are named in this Adversary Proceeding: Ming Chu Chang ("Defendant/Chang") and American First National Bank ("Defendant/AFNB"). Defendant/AFNB was the former lender to the Plaintiff/Debtor and lienholder on the Real Property that noticed and posted the Real Property for the alleged non-judicial foreclosure sale that is the subject of this Adversary Proceeding.  Defendant/Chang is an individual that acquired Defendant/AFNB's note and deed of trust, just a few days before the scheduled foreclosure sale. The Plaintiff/Debtor has requested in its First Amended Adversary Complaint to Determine Extent and Priority of Interests [DE # 14 in the Adversary Proceeding][2] (the "Amended Complaint") two alternative forms of relief from the Court.  First, Count 1 of the Amended Complaint seeks a declaratory judgment that Plaintiff/Debtor is the legal and rightful owner of the Real Property, that no valid foreclosure sale to Defendant/Williams occurred, that Defendant/Williams has no interest in the Real Property, and that Defendant/Chang, at this point, still holds a lien on the Real Property (there having never been a foreclosure).  Second, Count 2, to the extent the Court finds that a legally enforceable sale or transfer of an interest to Defendant/Williams did occur, seeks in the alternative avoidance of the sale/transfer, under

---

leases on the Real Property, each with an option to purchase.  DE # 2 in the Bankruptcy Case.  References to "DE # __ in the Bankruptcy Case" herein refer to the docket entry number at which a pleading appears in the docket maintained by the Bankruptcy Court Clerk in the Bankruptcy Case.

[2] References to "DE # __ in the Adversary Proceeding" herein refer to the docket entry number at which a pleading appears in the docket maintained by the Bankruptcy Court Clerk in the Adversary Proceeding.

either section 548 of the Bankruptcy Code[3] or section 24 of the Texas Business and Commerce Code (the "Texas Uniform Fraudulent Transfer Act" or "TUFTA").[4]

Now pending before the Court are Motions for Summary Judgment filed by the Plaintiff/Debtor, by Defendant/Chang, and by Defendant/AFNB (collectively, the "Movants"). The three Motions for Summary Judgment[5] seek summary judgment on **only** Count 1 of the Amended Complaint—specifically requesting that the Court find, as a matter of law, that the Plaintiff/Debtor is the lawful owner of the Real Property, that no valid foreclosure sale ever occurred, that Defendant/Williams has no interest in the Real Property, and that the Real Property is still subject to Defendant/Chang's lien.[6]  No party has moved for summary judgment on Count 2 of the Amended Complaint.

---

[3] 11 U.S.C. § 548.

[4] Tex. Bus. & Com. Code § 24.005.

[5] To be clear, Defendant/Chang filed his Motion for Summary Judgment, Brief and Appendix in Support [DE ## 41 & 42 in the Adversary Proceeding] on March 13, 2014.  On that same day, Defendant/AFNB also filed a separate Motion for Summary and Brief in Support, which incorporates and adopts Defendant/Chang's Motion for Summary Judgment [DE ## 44 & 45 in the Adversary Proceeding].  Finally, the Plaintiff/Debtor filed its Motion for Summary Judgment and Brief in Support on March 17, 2014, which also incorporates and adopts Defendant/Chang's Motion for Summary Judgment [DE ## 47 & 48 in the Adversary Proceeding].  The Court will refer to these collectively as the "Motions for Summary Judgment."

[6] With regard to the Motions for Summary Judgment, the Court specifically refers to:

- Defendant/Chang's Motion for Summary Judgment [DE # 41 in the Adversary Proceeding], Brief in Support [DE # 42 in the Adversary Proceeding], and Appendix [DE # 41-1 in the Adversary Proceeding]; Defendant/AFNB's Motion for Summary Judgment [DE # 44 in the Adversary Proceeding] and Brief in Support [DE # 45 in the Adversary Proceeding]; and Plaintiff/Debtor's Motion for Summary Judgment [DE # 47 in the Adversary Proceeding] and Brief in Support [DE # 48 in the Adversary Proceeding]

- Defendant/Williams' Response to Defendant/Chang's Motion for Summary Judgment [DE # 82 in the Adversary Proceeding], Brief in Support [DE # 83 in the Adversary Proceeding], and Appendix [DE # 84 in the Adversary Proceeding]; Defendant/Williams' Response to Defendant/AFNB's Motion for Summary Judgment [DE # 86 in the Adversary Proceeding]; and Defendant/Williams' Response to Debtor/Plaintiff's Motion for Summary Judgment [DE # 85 in the Adversary Proceeding]

- Defendant/Chang's Reply [DE # 95 in the Adversary Proceeding]; Defendant/AFNB's Reply, Brief in Support and Appendix [DE # 94 in the Adversary Proceeding]; Debtor/Plaintiff's Reply [DE # 96 in the Adversary Proceeding]; and Defendant/AFNB's Supplemental Reply Brief [DE # 102 in the Adversary Proceeding]

For the reasons articulated below, the Court concludes, based on the undisputed summary judgment evidence, that a lawful foreclosure sale ***never,*** in fact, occurred—due to the fact that the name and address of the individual who is alleged by Defendant/Williams to have conducted said foreclosure sale (*i.e.,* an individual named Jorge Gonzalez, III—who was an alleged substitute trustee that was appointed the day before the sale) ***did not appear on the face of any notice of sale that was served, posted and filed*** in accordance with sections 51.002 and 51.0075(e) of the Texas Property Code.[7]  This rendered the alleged foreclosure sale void.  Strict compliance (with the law and deed of trust) is necessary to invoke the power of sale under a deed of trust.[8]  Thus, based on the undisputed summary judgment evidence, the Plaintiff/Debtor should be deemed to be the current and lawful owner of the Real Property (subject to a lien of Defendant/Chang).  Accordingly, the Court **GRANTS** summary judgment on behalf of the Plaintiff/Debtor, Defendant/Chang, and Defendant/AFNB as to Count 1 of the Amended Complaint.  As a result, Count 2 is **DISMISSED** as moot.

## I.    JURISDICTION

Bankruptcy subject matter jurisdiction exists in this Adversary Proceeding, pursuant to 28 U.S.C. § 1334(b).  The bankruptcy judges in this district are generally granted authority to exercise bankruptcy subject matter jurisdiction, pursuant to 28 U.S.C. § 157(a) and the Standing Order of Reference of Bankruptcy Cases and Proceedings (Misc. Rule No. 33), for the Northern District of Texas, dated August 3, 1984.  Count 1 of the Adversary Proceeding (which is the

---

The bankruptcy court also allowed submission of additional letter briefs after the hearing on the Motions for Summary Judgment.  *See* DE ## 105, 106, 107 & 108 in the Adversary Proceeding.

[7] *See* Tex. Prop Code §§ 51.002(b), 51.0075(3).

[8] *In re AMRCO, Inc.*, 496 B.R. 442, 447-49 (Bankr. W.D. Tex. 2013); *G4 Trust v. Consol. Gasoline*, No. 02-10-00404-CV, 2011 WL 3835656, at *3 (Tex. App.—Fort Worth, Aug. 31, 2011, pet. denied).

subject of the pending Motions for Summary Judgment) implicates noncore, "related to" matters.

Specifically, the issues in Count 1 involve state law (foreclosure law).  However, the outcome of

Count 1 of the Adversary Proceeding could conceivably have an impact upon the bankruptcy

estate being administered,[9] since the Plaintiff/Debtor's very existence and all of its income and

reorganization prospects derive from the Real Property; thus, there is "related to" (noncore)

bankruptcy subject matter jurisdiction.[10]  The Count 2 fraudulent transfer claim (which is not the

subject of the Motions for Summary Judgment) involves statutory "core" matters.[11]  However, in

light of the United States Supreme Court's *Stern v. Marshall*[12] and *Executive Benefits*[13]

decisions, and since Defendant/Williams filed no proof of claim in the underlying bankruptcy

case, the bankruptcy court believes that it does not have Constitutional authority to enter a final

judgment on the Count 2 claim.  To the extent it is relevant, Defendant/Williams does not

consent to the entry of a final judgment or order by the bankruptcy court; all other parties

(including the Plaintiff/Debtor, Defendant/Chang, and Defendant/AFNB) do consent. [14]  In any

event, in light of (a) the noncore nature of the Count 1 claims, and (b) the Constitutional problem

---

[9] *See Wood v. Wood (In re Wood),* 825 F.2d 90, 93 (5th Cir. 1987).

[10] The Debtor is actually now at a post-confirmation stage.  However, there is still "related to" subject matter jurisdiction, even at this post-confirmation stage, since the outcome of the Adversary Proceeding bears upon the implementation and execution of the plan being administered.  *Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 391 (5th Cir. 2001); *U.S. Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass Corp.)*, 301 F.3d 296, 304-05 (5th Cir. 2002).  *See also Newby v. Enron Corp. (In re Enron Corp. Sec. Derivative & ERISA Litig. MDL-1446)*, 535 F.3d 325, 335 (5th Cir. 2008).

[11] 28 U.S.C. § 157(b)(2)(H); *see also* 28 U.S.C. § 157(b)(2)(A) & (O).

[12] *Stern v. Marshall*, 131 S. Ct. 2594 (2011).

[13] *Exec. Benefits Ins. Agency v. Arkinson*, 134 S. Ct. 2165 (2014).

[14] At the current time in the Fifth Circuit, consent no longer would seem to matter with regard to a bankruptcy court adjudicating either noncore matters or matters that may be statutorily core but involve state law, private rights (which would likely be present in this case).  *BP RE, L.P. v. RML Waxahachie Dodge, L.L.C. (In re BP RE, L.P.)*, 735 F.3d 279 (5th Cir. 2013), *reh'g denied*, 744 F.3d 1371 (5th Cir. 2014); *Frazin v. Haynes & Boone, L.L.P. (In re Frazin)*, 732 F.3d 313 (5th Cir. 2013).

with the bankruptcy court entering a final order even on the Count 2 statutory "core" claims, the

bankruptcy court *sua sponte* recommended to the District Court, on April 9, 2014, that it

withdraw the reference from the bankruptcy court, upon certification by it that the parties are

ready for trial.[15]   The bankruptcy court also recommended that the District Court allow pre-trial

matters to be handled by the bankruptcy court (with the District Court having final, *de novo*

review of any order of the bankruptcy court that might have the effect of finally disposing of

claims), pursuant to the procedures section 28 U.S.C. § 157(c)(1).   On April 15, 2014, the

District Court entered an Order accepting the bankruptcy court's report and recommendation.[16]

Against this backdrop, this bankruptcy court concluded that it should not itself issue a final

dispositive order on the Motions for Summary Judgment but, rather, that it should make a

recommendation for a proposed ruling to the District Court.   The bankruptcy court concluded

this is what this Court intended when it issued its Order of April 15, 2014, referring all pretrial

matters to the bankruptcy court, but directing the bankruptcy court to submit dispositive matters

to it with a recommended disposition.

---

[15] DE # 56 in the Adversary Proceeding.

[16] DE # 61 in the Adversary Proceeding.

## II.      THE UNDISPUTED SUMMARY JUDGMENT EVIDENCE[17]

1.      The Plaintiff/Debtor presently holds (and at all relevant times has held) legal title to 2.024 acres of land and the improvements thereon located in George West, Live Oak County, Texas (the "Real Property").[18]

2.      The Plaintiff/Debtor is the obligor on a promissory note (the "Note") dated January 3, 2007, which was secured by a Deed of Trust (the "Deed of Trust") on the Real Property, of the same date.[19]  The Note and Deed of Trust were previously owned and held by Defendant/AFNB, but they were subsequently purchased by Defendant/Chang.[20]

3.      Prior to Defendant/Chang acquiring the Note and Deed of Trust from Defendant/AFNB, the Plaintiff/Debtor defaulted on its obligations to pay the Note, and Defendant/AFNB began collections efforts and ultimately sought to foreclose on the Real Property.[21]

4.      On March 8, 2012, a Notice of Substitute Trustee's Sale was mailed to the Plaintiff/Debtor by an individual named Walter A. Schroeder, attorney for Defendant/AFNB,[22] and on March 9, 2012, the same Notice of Substitute Trustee's Sale was recorded and posted at

---

[17] The Court will refer to: (1) Defendant/Chang's Appendix as "Chang App. at __"; (2) Defendant/AFNB's Appendix as "AFNB App. at __"; and (3) Defendant/Williams' Appendix as "Williams' App. at __".  Note that, in determining the merits of the Motions for Summary, the Court also has discretion to take judicial notice of all documents filed with the bankruptcy court in the Adversary Proceeding.  *See Goldberg v. Craig (In re Hydro-Action, Inc.)*, 341 B.R. 186, 188 (Bankr. E.D. Tex. 2006) (citing Fed. R. Evid. 201(b), (f)).

[18] *See* DE ## 14 & 93 in the Adversary Proceeding (the Amended Complaint and Defendant/Williams' Amended Answer).

[19] Chang App. at 5-13.

[20] *Id.* at 3-13 & 18-20.

[21] *Id.* at 3.

[22] *Id.*  at 14-17.

the Live Oak County, Texas Courthouse by Live Oak Title Company, which happens to be owned by Defendant/Williams (hereinafter, the "March 9, 2012 Notice of Sale"). [23]  The Notice of Sale of March 9, 2012 provided that there would be a public sale by auction of the Real Property on April 3, 2012, between 1:00 p.m. and 4:00 p.m., and further provided that ***Walter A. Schroeder and/or Tony Y. Kuo (with addresses for both shown) were both substitute trustees with authority to conduct the sale***. [24]  The March 9, 2012 Notice of Sale was signed by Walter A. Schroeder, at the address of "9999 Bellaire Blvd., Suite 350, Houston, Texas 77036," and by Tony Y. Kuo, also at the address of "9999 Bellaire Blvd., Suite 350, Houston, Texas 77036." [25]

5.      On March 30, 2012—some 21 days later and just four days prior to the scheduled foreclosure sale—the Note and Deed of Trust were purchased by Defendant/Chang from Defendant/AFNB, and an Assignment of Note and Liens was duly executed, with Defendant/Chang paying Defendant/AFNB more than $288,000. [26]  Defendant/Chang executed a Memorandum of Designation of Substitute Trustee on April 2, 2014. [27]  Defendant/Chang's signature on the Memorandum of Designation of Substitute Trustee was notarized by an individual named Ken Mok and the document designated Jorge Gonzalez III ("Mr. Gonzalez") as the new Substitute Trustee, effective April 2, 2012, with all powers to act under the Deed of Trust and the March 9, 2012 Notice of Sale, and specifically adding the words that the "Trustee substituted out:  Walter A. Schroeder and/or Tony Y. Kuo." [28]  No address for Mr. Gonzalez was

---

[23] *Id.* at 67; Williams' App. at 30-31.

[24] Chang App. at 14-17.

[25] *Id.* at 15.

[26] *Id.* at 3-4 & 18-21.

[27] Williams' App. at 21-22 & 59-60.

[28] *Id.* at 59.

shown on the document. This Memorandum of Designation of Substitute Trustee (hereinafter, the "Gonzalez Appointment") was executed *just one day before the scheduled foreclosure sale. Moreover, there was no summary judgment evidence that the Gonzalez Appointment was ever served on the Plaintiff/Debtor or recorded and posted at the Live Oak County, Texas Courthouse.*[29] In any event, the Gonzalez Appointment certainly was not served, posted and filed 21 days before the scheduled foreclosure sale.

6.      About 1 o'clock on April 3, 2012, Defendant/Williams arrived at the Live Oak County Courthouse, in George West, Texas (which was across the street from his title company) to bid on the Real Property.[30]

7.      Defendant/Williams met Mr. Gonzalez (apparently by happenstance, while waiting around) and discovered that they were both there concerning the same Real Property; in fact, Mr. Gonzalez showed Defendant/Williams the Gonzalez Appointment, purportedly naming him as a new substitute trustee on the Real Property.[31]  Defendant/Williams ultimately made an oral bid to Mr. Gonzalez of $300,000.00 cash for the Real Property.[32]  Defendant/Williams contends (and it is not disputed by Movants, for purposes of the Motions for Summary Judgment) that his $300,000.00 bid was accepted by Mr. Gonzalez.[33]  However, according to Defendant/Williams (which is not disputed by Movants, for purposes of the Motions for Summary Judgment),  Mr. Gonzalez set two conditions on the sale: (1) that Defendant/Williams

---

[29] *Id.* at 22-24.

[30] *Id.* at 32.

[31] *Id.* at 32-34.

[32] *Id.* at 36.

[33] *Id.*

return to the Live Oak County Clerk's Office by 4 p.m.; and (2) bring a cashier's check for $300,000.00.[34] Defendant/Williams returned by 4 p.m. with a $300,000 cashier's check made payable to ***"Walter Schroeder, Trustee"*** (Schroeder was Defendant/AFNB's lawyer and was one of the original substitute trustees named in the March 9, 2012 Notice of Sale). Defendant/Williams represents that he was ready, willing and able to purchase the Real Property at that time.  However, Mr. Gonzalez did not return that afternoon—or at any time thereafter—to collect the cashier's check, nor was Walter Schroeder in the vicinity.[35]  The $300,000 check has remained in the possession of Defendant/Williams' lawyer.[36]

8.     On September 27, 2012, Defendant/Williams filed a state court suit to enforce the alleged oral contract he asserts he made with Mr. Gonzalez to purchase the Real Property, and filed a notice of *lis pendens*.[37]   On July 11, 2013, Defendant/Williams amended his petition and sued the Plaintiff/Debtor to enforce his alleged oral contract to purchase the Real Property.[38]

9.     On September 19, 2013, the Plaintiff/Debtor filed a voluntary petition for bankruptcy relief pursuant to Chapter 11 of the Bankruptcy Code.

10.     On November 15, 2013, the Plaintiff/Debtor filed the Adversary Proceeding.

---

[34] *Id*. at 39-40; Chang App. at 77-78.

[35] *Id*. at 69-72; Williams' App. at 40.  Note, at the hearing on the Motions for Summary Judgment held on September 10, 2014, the Movants (the Plaintiff/Debtor, Defendant/AFNB, and Defendant/Chang) stated that, while disputed facts existed regarding what actually occurred or did not occur at the purported foreclosure sale of April 3, 2012, and that such facts would need to be decided if there were a trial, for purposes of ruling on the Motions for Summary Judgment, the Movants would not dispute that Defendant/Williams made a $300,000 bid on the Real Property, that the bid was accepted by Mr. Gonzalez (with the condition that Defendant/Williams return by 4:00 p.m. with a cashier's check for $300,000), that Defendant/Williams returned by 4 p.m. with a $300,000 cashier's check made payable to "Walter Schroeder, Trustee," and that Williams was then ready, willing and able to purchase the Real Property.

[36] Chang App. at 80-81.

[37] *Id*. at 22-31.

[38] *Id*. at 32-65.

11.     All parties in this Adversary Proceeding except Defendant/Williams take the position that no valid foreclosure sale took place.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate whenever a movant establishes that the pleadings, affidavits, and other evidence available to the court demonstrate that no genuine issue of material fact exists, and the movant is, thus, entitled to judgment as a matter of law.[39]  A genuine issue of material fact is present when the evidence is such that a reasonable fact finder could return a verdict for the non-movant.[40]  Material issues are those that could affect the outcome of the action.[41]  The court must view all evidence in a light most favorable to the non-moving party.[42]  Factual controversies must be resolved in favor of the non-movant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[43]  If the movant satisfies its burden, the non-movant must then come forward with specific evidence to show that there is a genuine issue of fact.[44]  The non-movant may not merely rely on conclusory allegations or the pleadings.[45]  Rather, it must demonstrate specific facts identifying a genuine issue to be tried in order to avoid summary judgment.[46]  Thus, summary judgment is

---

[39] Fed. R. Civ. P. 56(a); *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006); *Lockett v. Wal-Mart Stores, Inc.*, 337 F. Supp. 2d 887, 891 (E.D. Tex. 2004).

[40] *Piazza's Seafood World, LLC*, 448 F.3d at 752 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[41] *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002), *cert. denied*, 537 U.S. 1188 (2003).

[42] *Piazza's Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891.

[43] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[44] *Lockett*, 337 F. Supp. 2d at 891; *see also Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993).

[45] *Lockett*, 337 F. Supp. 2d at 891.

[46] Fed. R. Civ. P. 56(c)(1); *Piazza's Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891.

proper if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[47]

## IV. ANALYSIS

As stated above, the Movants have sought summary judgment on Count 1 of the Amended Complaint, and ask that the Court declare, as a matter of law, that no valid non-judicial foreclosure sale of the Real Property occurred on April 3, 2012, and that Defendant/Williams has no interest in the Real Property. The primary legal basis asserted is that the alleged substitute trustee (Mr. Gonzalez), with whom Defendant/Williams dealt, lacked authority to sell the Real Property, thereby rendering the purported foreclosure sale void as a matter of law, *since Mr. Gonzalez's name and address were not included in the March 9, 2012 Notice of Sale*). Resolution of this issue ultimately hinges upon this Court's interpretation of two Texas statutes which govern non-judicial foreclosure sales, specifically sections 51.002 and 51.0075(e) of the Texas Property Code.[48] Movants have additionally argued that, even if the Court were to find as a matter of law that Mr. Gonzalez had authority to conduct the foreclosure sale, that: (1) no consideration was paid or tendered to the substitute trustee, to Defendant/AFNB, to Defendant/Chang or to the Plaintiff/Debtor for the Real Property; and (2) the statute of frauds bars Defendant/Williams' claims against the Real Property.[49] To the extent that any of the Movants' arguments would otherwise prevail, Defendant/Williams argues that the Movants are

---

[47] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[48] Tex. Prop. Code §§ 51.002, 51.0075.

[49] Movants appear to argue that any oral agreement by Mr. Gonzalez to give Defendant/Williams until 4:00 p.m. to deliver the funds to purchase the Real Property was a contract for the sale of real property and, therefore, had to be in writing under the statute of frauds.

barred from declaring that the foreclosure sale is invalid under the affirmative defense of

equitable estoppel.

> ### a. Did Mr. Gonzalez Have Authority to Conduct the Foreclosure Sale, Pursuant to the Deed of Trust and Sections 51.002 and 51.0075(e) of the Texas Property Code?

The power of a trustee to sell property for a party is derived solely from the applicable

deed of trust and can only be exercised in strict compliance with it and Texas law.[50]  Here, the

Deed of Trust authorized the trustee to conduct a non-judicial foreclosure sale as follows:

> . . .
>
> **Trustee.** In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale . . . ***in accordance with and to the full extent provided by applicable law.***
>
> **Substitute Trustee**. Lender, at Lender's option, from time to time, and more than once, may appoint in writing a successor or substitute trustee, with or without cause, including the resignation, absence, death, inability, refusal or failure to act of the Trustee.  The successor or substitute trustee may be appointed without ever requiring the resignation of the former trustee and without any formality except for the execution and acknowledgement of the appointment by the beneficiary of this Deed of Trust.  The successor or substitute trustee shall then succeed to all rights, obligations, and duties of the Trustee.  This appointment may be made on the Lender's behalf by the President, any Vice President, Secretary, or Cashier of Lender. . . . [51]

Looking at this language, it appears that Defendant/Chang had the right to appoint a substitute

trustee at any time upon becoming the assignee of the Note and Deed of Trust; thus, the

appointment of Mr. Gonzalez was wholly permissible and did not violate any of the provisions in

the Deed of Trust.  However, Defendant/Chang and Mr. Gonzalez would also still need to

comply with the applicable notice requirements under Texas law, in order to lawfully conduct a

---

[50] *Michael v. Crawford*, 193 S.W. 1070, 1070-71 (1917); *Conversion Props., L.L.C. v. Kessler*, 994 S.W.2d 810, 813 (Tex. App.—Dallas 1999, pet. denied); *Bonilla v. Roberson*, 918 S.W.2d 17, 21 (Tex. App.—Corpus Christi 1996, no pet).

[51] *See* Chang App. 10 (emphasis added).

non-judicial foreclosure sale of the Real Property.  Accordingly, the Court must look to the

Texas Property Code and determine what type of notice and procedures it requires for a trustee

or substitute trustee to conduct a non-judicial foreclosure sale in Texas.

Section 51.002 of the Texas Property Code provides:

(a) A sale of real property under a power of sale conferred by a deed of trust or other contract lien must be a public sale at auction held between 10 a.m. and 4 p.m. of the first Tuesday of a month. Except as provided by Subsection (h), the sale must take place at the county courthouse in the county in which the land is located, or if the property is located in more than one county, the sale may be made at the courthouse in any county in which the property is located. The commissioners court shall designate the area at the courthouse where the sales are to take place and shall record the designation in the real property records of the county. The sale must occur in the designated area. If no area is designated by the commissioners court, the notice of sale must designate the area where the sale covered by that notice is to take place, and the sale must occur in that area.

(b) Except as provided by Subsection (b-1), ***notice of the sale,*** which must include a statement of the earliest time at which the sale will begin, ***must be given at least 21 days before the date of the sale by:***

*(1) **posting at the courthouse door of each county in which the property is located a written notice designating the county in which the property will be sold;***

*(2) **filing in the office of the county clerk of each county in which the property is located a copy of the notice posted under Subdivision (1); and***

*(3) **serving written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt.***

(b-1) If the courthouse or county clerk's office is closed because of inclement weather, natural disaster, or other act of God, a notice required to be posted at the courthouse under Subsection (b)(1) or filed with the county clerk under Subsection (b)(2) may be posted or filed, as appropriate, up to 48 hours after the courthouse or county clerk's office reopens for business, as applicable. [52] . . .

Moreover, subsection (e) of section 51.0075 of the Texas Property Code, which was enacted in

2005, provides that:

---

[52] Tex. Prop. Code § 51.002 (emphasis added).

     (e) The **name and a street address for a trustee or substitute trustees shall be disclosed on the notice required by Section 51.002(b).** [53]

Here, the unrefuted summary judgment evidence demonstrates that the March 9, 2012 Notice of Sale only listed the names and addresses of Walter A. Schroeder and/or Tony Y. Kuo as substitute trustee(s).  There is no mention of Mr. Gonzalez in the March 9, 2012 Notice of Sale.  In fact, Mr. Gonzalez was not "in the picture" on that date.  The only written documentation evidencing the existence of Mr. Gonzalez as a substitute trustee was in the Gonzalez Appointment, dated April 2, 2012, just one day before the scheduled foreclosure sale.  Moreover, it is undisputed that the Gonzalez Appointment was never served on the Plaintiff/Debtor or recorded and posted at the Live Oak County, Texas courthouse.  And, again, Mr. Gonzalez's address was not shown on the Gonzalez Appointment.

     Despite the fact that the March 9, 2012 Notice of Sale did not list Mr. Gonzalez as a substitute trustee, Defendant/Williams has argued that there has, nevertheless, been compliance with the strict notice requirements of the Texas Property Code, because a lien holder is permitted to appoint a substitute trustee at any time prior to a foreclosure sale, **without filing and serving a new notice of sale**.  In other words, Defendant/Williams has argued that, as long as **the March 9, 2012 Notice of Sale** was in compliance with the notice provisions of the Texas Property Code— by listing the name and address of a substitute trustee, and by having been served on the Plaintiff/Debtor, and recorded and posted at the Live Oak County, Texas courthouse— Defendant/Chang could have appointed a new substitute trustee, at any point in time prior to the scheduled foreclosure sale, without having to re-notice the sale for a later date.  In support of this position, Defendant/Williams has cited to several cases that pre-date the enactment of sections 51.002 and 51.0075 of the Texas Property Code, which stand for the proposition that a substitute

---

[53] Tex. Prop. Code § 51.0075(e) (emphasis added).

trustee may be appointed at any time prior to the foreclosure sale, without the necessity to re-notice the sale.[54]  While the Court acknowledges that these earlier cases support such a position, the Court believes that such cases are no longer dispositive, as the more recent enactment of sections 51.002 and 51.0075 of the Texas Property Code by the Texas Legislature clearly altered the way foreclosures were to be conducted in Texas, and prescribed stricter requirements for noticing foreclosure sales.[55]  Moreover, these stricter requirements have been recognized by various courts in Texas, despite the existence of the earlier cases cited to by Defendant/Williams.[56]

Bankruptcy Judge Tony Davis, in *In re AMRCO, Inc.*, held that the failure to include a substitute trustee's **address** on the face of a notice of a non-judicial foreclosure sale, as required by section 51.0075(e) of the Texas Property Code, rendered a foreclosure sale invalid.[57]  In *AMRCO,* a creditor, Shoal Creek ("Shoal"), had loaned AMRCO, Inc. ("AMRCO") the sum of $175,000 in April 2012.  In return, Shoal accepted a note from AMRCO, secured by a deed of trust on an undeveloped lot located in Austin, Texas (the "AMRCO Property").[58]  AMRCO

---

[54] *See, e.g., Tarrant Sav. Ass'n. v. Lucky Homes, Inc.*, 390 S.W.2d 473 (Tex. 1965); *Loomis Land & Cattle Co. v. Diversified Mortg. Investors*, 533 S.W.2d 420 (Tex. Civ. App.—Tyler 1976, writ ref'd n.r.e.); *Koehler v. Pioneer Am. Ins. Co.*, 425 S.W.2d 889, 891 (Tex. Civ. App.—Fort Worth 1968, no writ).

[55] *See* William H. Locke, Jr., et al., TEXAS FORECLOSURE MANUAL, §11.5 (3rd ed. 2014) ("Conventional wisdom, based on case law, is that there is no necessity to report and send new notices of the scheduled foreclosure sale date if a new trustee is appointed after the original notice of sale was mailed to the obligor of the debt, filed with the county clerk, and posted at the courthouse. . . . However, under Texas Property Code section 51.0075(e), failure to provide the borrower with twenty-one days' notice of the name and address of the newly appointed trustee who will conduct the sale may create an unwanted litigation risk . . . To prevent litigation risks, new foreclosure sale notices with the name and address of the newly appointed trustee should be mailed and reposted so as to give the borrower twenty-one days' notice of the newly appointed trustee.")

[56] *See, e.g., In re AMRCO, Inc.*, 496 B.R. 442 (Bankr. W.D. Tex. 2013); *Pelayo v. Wells Fargo Bank, N.A.*, No. SA-13-CV-1019-DAE, 2014 WL 3513207, at *1 (W.D. Tex. July 14, 2014).

[57] *AMRCO, Inc.*, 496 B.R. at 449.

[58] *Id.* at 443.

16

failed to make timely payments under the note, and Shoal declared a default and instituted foreclosure proceedings on the AMRCO Property.[59]   A foreclosure sale was conducted just moments before AMRCO filed a Chapter 11 bankruptcy case, and such foreclosure sale was later challenged by AMRCO as being void, since the strict procedures in section 51.0075(e) had not been followed.  Specifically, in the ***Deed of Trust*** at issue, the law firm of "Jeremy Adam Kruger, PC" (with address) had been named as the trustee with authority to conduct a foreclosure sale for Shoal.  Later, Jeremy Adam Kruger of "Jeremy Adam Kruger, PC" started a different law firm called Kruger Carson PLLC ("Kruger Carson").[60]   Subsequently, an ***Appointment of Substitute Trustee*** was recorded, naming Kruger Carson as the substitute trustee under the Deed of Trust, and Kruger Carson's address was set forth on the Appointment of Substitute Trustee. However, the ***Notice of Foreclosure Sale*** that was mailed, posted and filed, naming Kruger Carson as the substitute trustee, ***did not list Kruger Carson's address***.[61]   The foreclosure sale was conducted by Jeremy Adam Kruger, acting for Kruger Carson.[62]   Shoal purchased the AMRCO Property at the foreclosure sale, and AMRCO filed bankruptcy minutes later, claiming the AMRCO Property as part of the bankruptcy estate.[63]

AMRCO argued that the foreclosure sale was invalid because Kruger Carson's address was not included on the face of the Notice of Foreclosure Sale, as required by Section 51.0075(e)

---

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.* at 444.

[63] *Id.*

of the Texas Property Code.[64]  Shoal argued that the address disclosure requirement was

**substantially complied with** because: (a) the original trustee in the Deed of Trust was the law

firm of "Jeremy Adam Kruger, PC" (which had the very same address as Kruger Carson) and

such Deed of Trust was **attached** to the publicly posted Notice of Foreclosure Sale,[65] (b) the

Appointment of Substitute Trustee (naming "Kruger Carson" in place of "Jeremy Adam Kruger,

PC") contained the address for Kruger Carson and it was dated and duly recorded the very same

date as the Notice of Foreclosure Sale and was easily retrievable; and (c) the Notice of

Foreclosure Sale was mailed to AMRCO in an envelope with Kruger Carson's address printed

thereon.[66]  Citing to the Texas Court of Appeals decision of *G4 Trust v. Consolidated Gasoline,*

*Inc.*,[67] Judge Davis noted that "strict compliance with the notice requirements in a deed of trust is

necessary for a trustee to invoke the power of sale in a foreclosure," and that Shoal's failure to

list the substitute trustee's address on the face of the Notice of Foreclosure Sale (as opposed to

on an attachment) pursuant to section 51.0075(e) of the Texas Property Code rendered the

foreclosure sale invalid.[68]  Finding that "substantial compliance" with the Texas Property Code

was not enough, Judge Davis dismissed Shoal's equitable arguments that the omitted address of

the substitute trustee was readily available outside the actual Notice of Foreclosure Sale.[69]

---

[64] *Id.* at 445.  AMRCO also argued that the foreclosure was invalid because (1) Mr. Kruger's firm, not Mr. Kruger, was appointed as substitute trustee, and therefore, he had no right to act as the substitute trustee under Texas law; and (2) the foreclosure sale was conducted unfairly and with irregularities, such that there was a gross shortfall in the price attained at the sale.  Judge Davis swiftly held such arguments to have no merit.  *Id.*

[65] *Id.* at 447.

[66] *Id.*

[67] *G4 Trust v. Consolidated Gasoline, Inc.*, No. 02-10-00404-CV, 2011 WL 3835656, at * 3 (Tex. App.—Fort Worth Aug 3, 2011, pet. denied).

[68] *Id.* at 448.

[69] *Id.*

Another recent case which has explored the stricter notice requirements prescribed by sections 51.002(b) and 51.0075(e) of the Texas Property Code is *Pelayo v. Wells Fargo Bank, N.A.*[70]  In *Pelayo*, the plaintiffs, Miguel and Isabel Pelayo (collectively, the "Pelayos"), had obtained a loan in early 2007 from the defendant Wells Fargo Bank, N.A. ("Wells"), secured by a mortgage on property located in San Antonio, Texas (the "San Antonio Property").[71]  The Pelayos executed a note and deed of trust in conjunction with the loan.[72]  The Pelayos eventually fell behind on their mortgage payments, and on August 9, 2013 Wells sent the Pelayos a "notice of acceleration of sale," which notified the Pelayos that a foreclosure sale of the San Antonio Property would be conducted on September 3, 2013.[73]  This notice gave 25 days notice of the foreclosure sale.  Wells recorded the notice on August 12, 2013, 22 days before the scheduled foreclosure sale.[74]  On August 13, 2013, 21 days before the scheduled foreclosure sale, Wells sent the Pelayos a letter informing them that it had appointed a substitute trustee.[75]  A notice of the appointment of the substitute trustee was recorded 19 days before the foreclosure sale, on August 15, 2013.  On September 3, 2013, the San Antonio Property was sold at a foreclosure sale.[76]  The Pelayos filed suit, asserting causes of action for wrongful and defective foreclosure,

---

[70] *Pelayo v. Wells Fargo Bank, N.A.*, No. SA-13-CV-1019-DAE, 2014 WL 3513207, at *1 (W.D. Tex. July 14, 2014).

[71] *Id.*

[72] *Id.*

[73] *Id.*

[74] *Id.*

[75] *Id.*

[76] *Id.*

and promissory estoppel.[77]  Wells moved to dismiss.[78]  The Pelayos had asserted that the foreclosure sale was defective because the substitute trustee who conducted the foreclosure sale was without proper authority to act on behalf of the mortgagee at the time of foreclosure, because the substitute trustee had not yet technically been granted its authority by Wells, at the time the notice of sale was sent to Pelayos, or at the time such notice was recorded with Bexar County.[79]  It is somewhat hard to decipher the facts in the *Pelayo* opinion, but it appears to this court that ***the name and address of the substitute trustee who conducted the foreclosure sale was identified in the actual notice of sale*** (which was served and recorded more than 21 days before the foreclosure sale), but such substitute trustee had not yet been appointed by a formal document (*i.e.,* by a formal notice of appointment of substitute trustee) until a few days after the notice of sale was served and recorded (as noted earlier, the actual document appointing the substitute trustee was served on the Peyalos exactly 21 days before the substitute trustee sale and was recorded 19 days before the foreclosure sale).[80]  The district court ultimately disagreed with the Pelayos and held that Wells complied with sections 51.002 and 51.0075 of the Texas Property Code.[81]  In doing so, the district court noted that the notice of sale ***did*** identify the name and address of the substitute trustee that ultimately conducted the foreclosure sale of the San Antonio Property, and thus the court found Wells had strictly complied with the notice

---

[77] *Id.* at *2.

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] *Id.* at *3-4.

provisions proscribed by the Texas Property Code.[82]   It appears to this Court that the most important factor in upholding the foreclosure sale was that the substitute trustee who conducted the foreclosure sale had been identified, by name and address, at least 21 days before the foreclosure sale—even though the substitute trustee was not formally identified in a recorded ***notice of appointment of substitute trustee*** until a few days later.

In summary, both *AMRCO* and *Pelayo* recognized the necessity of a lienholder to strictly comply with the notice requirements prescribed under the Texas Property Code.  Like those courts, this Court believes that it is mandatory, under sections 51.002 and 51.0075(e) of the Texas Property Code, that a notice of foreclosure sale, identifying the name and address of the trustees/substitute trustee, be served by mail on all debtors, and posted and recorded at least 21 days before the foreclosure sale.[83]   While appointments of substitute trustees are always possible, ***new foreclosure sale notices with the name and address of the newly appointed trustee should be mailed and re-posted so as to give the borrower and the public at least 21 days' notice of the***

---

[82] *Id.* at *4.  The court further noted that, even if the timing issue on substituting the trustee did constitute a defect in the foreclosure proceedings, the Pelayos still failed to state a claim for wrongful foreclosure because they did not allege any facts to support the second and third elements of a wrongful foreclosure claim—namely, a grossly inadequate selling price and a causal connection between the defect and the grossly inadequate selling price.  *Id.*

[83] Like the *AMRCO* court, this Court will note and distinguish the Texas Supreme Court case of *Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 628 (Tex. 2012).  After stating that "the terms of a deed of trust must be strictly followed," the Texas Supreme Court went on to state that "minor defects in an otherwise valid foreclosure sale do not void it."  In the *Stephens* case, the "minor defect" that was urged and rejected as a basis for setting aside a foreclosure sale was not a genuine complaint that the notice and conduct of the foreclosure sale did not comply with the terms of a deed of trust or with the Texas Property Code.  There, the Deed of Trust showed the grantor as "Gary Ben Stephens, General Partner of Stephens Group, L.P., and Stephens Group II, L.P.," but the signature line on the same document only listed "Gary Ben Stephens" without listing his capacity as general partner.  The Stephens Group entities asked the court to void a foreclosure sale on the basis that Gary Ben Stephens' capacity was omitted from the signature line of the Deed of Trust and, thus, the Deed of Trust was internally inconsistent and confusing.  The court overruled this argument, indicating that there was nothing about the Deed of Trust that was confusing and the omission of this capacity information on the signature line of the Deed of Trust was harmless.  The court stated that "No reasonable bidder would have turned away from the foreclosure sale on that basis."  *Id.* at 628.  Like Judge Davis in *AMRCO*, this Court will not read the *Stephens* case to mean that the Texas Supreme Court has changed its stance on requiring foreclosure sales to strictly follow the terms of deeds of trust and the Texas Property Code.  In the *Stephens* case, there ***had***, in fact, been strict compliance with the Deed of Trust and the Texas Property Code.  There was an omission on the signature line that the Texas Supreme Court found not to be confusing and harmless.

*newly appointed trustee*.  Any case law to the contrary either pre-dates the enactment of sections 51.002 and 51.0075(e) of the Texas Property Code or continues to follow the older case law without considering the impact of these statutes.  Here, it is undisputed that the March 9, 2012 Notice of Sale did not include the name and address of Mr. Gonzalez—who was only appointed substitute trustee under the Deed of Trust the day before the scheduled foreclosure sale (and the Gonzalez Appointment was not only created on the eve of foreclosure, but it did not contain Mr. Gonzalez's address).  Accordingly, the Court finds that, as a matter of law, Mr. Gonzalez did not have authority to conduct a foreclosure sale of the Real Property on April 3, 2012, and that any alleged foreclosure sale that may have taken place then is void as a matter of law.

Having found that the April 3, 2012 alleged foreclosure sale was void, the Court need not address the additional alternative arguments made by the Movants, which they contend would also render any alleged sale of the Real Property to Defendants/Williams invalid, including Defendant/Williams' failure to properly tender payment for the Real Property, and whether the statute of frauds barred Defendants/Williams' claim for equitable title in the Real Property.  Such arguments would only be relevant if Mr. Gonzalez had authority to conduct the foreclosure sale in the first instance, and the Court has found as a matter of law that he did not.

### b. Are Movants Equitably Estopped From Asserting Defects in the Purported Foreclosure Sale?

Finally, Defendant/Williams has asserted that any attempt by the Movants to assert that the foreclosure sale was invalid, because it did not "strictly comply" with the relevant foreclosure statutes, is barred under the affirmative defense of equitable estoppel**.**

Defendant/Williams' equitable estoppel defense can be summarized as follows.  Ken Mok, the individual who prepared and notarized the Gonzalez Appointment, appears to have

been acting as the agent for both the Plaintiff/Debtor and the Defendant/Chang.[84]  Thus, according to Defendant/Williams, the Plaintiff/Debtor should be equitably estopped from complaining that there was a defect in the foreclosure process that caused the transaction with Defendant/Williams to be unenforceable, ***when such defect can be attributed back to its agent, Ken Mok***.[85]  The summary judgment evidence that allegedly creates a disputed fact issue on this point is that Ken Mok's bookkeeping company, Mok Chang & Co., LLC, provided bookkeeping services to the Plaintiff/Debtor for many years and, in fact, shared the same business address as shown to be the Plaintiff/Debtor's in its Voluntary Petition.[86]  Also, Ken Mok's sister (Yik Lin Lu) is the 100% owner of the Plaintiff/ Debtor[87] and, apparently, he helped her out with the business affairs of the Plaintiff/Debtor from time to time.[88]  Meanwhile, Ken Mok's wife's sister is Defendant/Chang.[89]  The Court will also take judicial notice of two things not mentioned by the parties.  First, the Voluntary Petition initiating the Bankruptcy Case is signed by an individual named David Mok, "Restructuring Officer."[90]  The Court has no evidence as to whether this person is related to Ken Mook.  Also, an individual named Jerry Kam-Kiong Mok is

---

[84] *See* Williams' App. at 58.

[85] The Court notes that Defendant/Williams actually asserts this defense against both Defendant/Chang and the Plaintiff/Debtor.  He does not assert the defense against Defendant/AFNB.  *See* DE # 83 in the Adversary Proceeding.

[86] *See* Plaintiff/Debtor's Voluntary Petition [DE # 1 in the Bankruptcy Case] & Plaintiff/Debtor's Statement of Financial Affairs, Question 19 [DE # 3 in the Bankruptcy Case].

[87] *See* Plaintiff/Debtor's Statement of Financial Affairs, Question 21 [DE # 3 in the Bankruptcy Case].

[88] *See* Williams' App. at 7, 8, 11, 12, 15, 17, 19, and 20-22.

[89] *Id.* at 7.

[90] *See* Plaintiff/Debtor's Voluntary Petition [DE # 1 in the Bankruptcy Case].

shown as the non-equity owning secretary and vice president for the Plaintiff/Debtor.[91]  The Court has no evidence as to whether this is a relative of Ken Mok.

What the Court does know is that the undisputed facts indicate that there was a coziness between the Plaintiff/Debtor and Defendant/Chang, including familial ties, and Ken Mok was right in the middle of these relationships.  A common sense inference from the undisputed facts is that Ken Mok orchestrated a situation where a party friendly to the Plaintiff/Debtor would buy the Note and Deed of Trust from Defendant/AFNB in late March 2012, and there would next be a friendly foreclosure by the new Noteholder, Defendant/Chang, in April 2012.  Undoubtedly, Plaintiff/Debtor and Defendant/Chang thought the Real Property was worth more than the underlying debt and that it was worth saving.[92]  Perhaps Mr. Gonzalez did not quite know what to do when a third-party bidder, Defendant/Williams, showed up and bid at the scheduled foreclosure sale.  Perhaps Mr. Gonzalez got conflicting instructions (or misinterpreted the instructions he did get) when he made phone calls to representatives of Defendant/Chang reporting on the $300,000 bid of Defendant/Williams (which was just enough to cover the secured debt).  The question is whether this is enough to create a material fact issue for an equitable estoppel defense, and whether the Court should probe into whether Ken Mok was legally acting as the agent for one or both of the Plaintiff/Debtor and Defendant/Chang?  The Court concludes it should not.

The four traditional elements of equitable estoppel are:  (1) the party to be estopped was aware of the facts; (2) the party to be estopped intended his act or omission to be acted upon; (3) the party asserting estoppel did not have knowledge of the facts; and (4) the party asserting

---

[91] *See* Plaintiff/Debtor's Statement of Financial Affairs, Question 21 [DE # 3 in the Bankruptcy Case].

[92] *See* Plaintiff/Debtor's Schedule A [DE # 2 in the Bankruptcy Case].

estoppel reasonably relied on the conduct of the other to his substantial injury.[93] In this Court's view, what Defendant/Williams is urging, in essence, is that there was "no harm/no foul" with regard to the foreclosure substitute trustee notice problem, *because the party whom Defendant/Williams is seeking to estop was aware of the fact that a new substitute trustee was designated* (*i.e.,* the Plaintiff/Debtor had ***actual knowledge*** of the new substitute trustee because Ken Mok, who prepared and notarized the document for the new lender, Defendant/Chang, was Plaintiff/Debtor's agent).  Thus, Defendant/Williams argues that the Court, ***in equity,*** ought not to take a "strict enforcement" approach with regard to the foreclosure sale notice defect. Defendant/Williams argues Plaintiff/Debtor and Defendant/Chang both ought to be equitably estopped from relying on a defect that their agent created.

Defendant/Williams has cited two Texas cases in support of his equitable estoppel defense:  *Rogers v. Boykin*, 298 S.W.2d 199 (Tex. Civ. App.—Eastland 1956, writ ref'd n.r.e.) and *Busbice v. Hunt*, 430 S.W.2d 291 (Tex. Civ. App.—Tyler 1968, writ ref'd n.r.e.).  This Court does not find that authority to be persuasive, and does not believe it should allow an equitable estoppel defense to override the Texas Property Code.  The notice requirements for a non-judicial foreclosure sale under Sections 51.002 and 51.0075(e) of the Texas Property Code are to be strictly enforced "for the method of enforcing the collection through such deeds is a harsh one."[94]  Admittedly, the Texas Property Code's strict procedures with regard to foreclosure sales are mostly, if not entirely, about ***protecting debtors;*** thus, allowing the Plaintiff/Debtor to complain about the authority of Mr. Gonzalez to conduct a foreclosure sale—when

---

[93] *Taylor v. U.S. Treasury Dept.*, 127 F.3d 470, 474 (5th Cir. 1997).  *See also Johnson V. Seacor Marine Corp.*, 404 F.3d 871, 878 (5th Cir. 2005) (describing the elements of equitable estoppel as a representation by conduct or word, justifiably relied upon by a party who changed his position to his detriment because of that reliance).

[94] *Houston First Am. Sav. v. Musick,* 650 S.W. 2d 764, 768 (Tex. 1983) (and citations therein).

Plaintiff/Debtor may have had actual knowledge of his identity and appointment as a substitute trustee since he was apparently handpicked by Ken Mok—may seem illogical or inequitable. However, the Texas Property Code requires that a notice of a foreclosure sale not only be served by mail on *obligors*, but also notice must be given *publicly* (by posting) and *as a matter of legal record* (by filing). The Texas Supreme Court has stated that the "statutory notice provisions of section 51.002 seek to not only protect the debtor by affording him a lengthy notice period in which he may cure, *but also adequately inform the third party public* in order to maximize the likelihood of a profitable public sale at market value in which the debtor may recover his equity in his property."[95]    In the case at bar, the Plaintiff/Debtor may have had actual knowledge of the new substitute trustee.  But the public—*i.e.,* the universe of potential bidders—would have no reason to have such knowledge as contemplated by sections 51.002 and 51.0075(e).  The public had no reason to know about Mr. Gonzalez.  Creating an equitable exception in a situation such as this could lead to the following unpalatable result:  Assume there was another third-party bidder besides Defendant/Williams willing to pay more at the foreclosure sale than Defendant/Williams and such bidder walked around the courthouse steps asking "is Walter Shroeder here?" and "is Tony Kuo here?"  (Walter Schroeder and Tony Kuo were the substitute trustees shown on the March 9, 2012 Notice of Sale).  When no one answered, assume that the potential bidder went home.  The potential bidder would not have had statutory notice of the new substitute trustee (Mr. Gonzalez) and did not know to look or ask for him.  The end result, in that scenario, is that the Plaintiff/Debtor would not have had the more profitable, public sale to recover his equity in the Real Property.  The strict notice requirements of section 51.002 operated to (a) give a debtor reasonable time (21 days) to perhaps cure defaults, and (b)

---

[95] *Jasper Fed. Sav. & Loan Ass'n v. Reddell*, 730 S.W.2d 672, 674-75 (Tex. 1987) (emphasis added).

maximize notice to the public to enhance the possibility of optimal recovery to the stakeholders. While strict adherence to sections 51.002 and 51.0075(e) of the Texas Property Code may seem rigid, it not only can avoid the unpalatable result of the scenario above, but can also guard against mischief.  A foreclosing lender, wanting to credit-bid its debt, could seek to substitute a trustee on the eve of a scheduled foreclosure sale, for the purpose of perhaps thwarting unaware potential third-party bidders?  Strict adherence protects a debtor's equity and perhaps other stakeholders/parties-in-interest from such a scenario.[96]

The Court concludes that the *Rogers* and *Busbice* cases cited by Defendant/Williams in support of his equitable estoppel defense are distinguishable and should be read narrowly. There, the issue was whether a party who had appointed a substitute trustee and attended a foreclosure sale, without making any objection, waived any irregularity in the sale and was, therefore, estopped from asserting that all of the parties who held an interest in the deed of trust did not join in the appointment of the substitute trustee.  In the case at bar, the Movants have not raised an issue regarding whether or not all parties who held an interest in the Note and Deed of Trust joined in the appointment of the substitute trustee, but, rather, whether or not the March 9, 2012 Notice of Sale complied with the strict notice requirements of the Texas Property Code. The Court finds that the error made in the case at bar (*i.e.,* failure to give the debtor and the public a full 21 days' notice of the name and address of a newly appointed substitute trustee) cannot be negated by an equitable estoppel defense.  Because Mr. Gonzalez did not have authority to conduct a foreclosure sale of the Real Property on April 3, 2012, the alleged

---

[96] Perhaps some would argue that any reasonably diligent potential bidder would likely have no problem locating the correct substitute trustee in most foreclosure-day situations.  This Court does not think that this matters.  Strict compliance with the Texas Property Code is necessary.  This Court does not believe that the Texas Legislature intended for courts to disregard the statutory requirements for non-judicial foreclosure sales in the Texas Property Code on a case by case basis, based on individual circumstances or equities.

foreclosure sale to Defendant/Williams was void as a matter of law, and the doctrine of equitable estoppel cannot be used to revive the void foreclosure sale.[97]

## V.     CONCLUSION

Matthew Bacon, an influential eighteenth century legal commentator, stated the following:  "A thing is void which was done against Law at the very Time of the doing it, and no Person is bound by such an Act."[98]  Strict compliance (with the law and contract) is required to invoke the power of a sale under a deed of trust.  In the case at bar, the name and address of a purported substitute trustee, Mr. Gonzales, did not appear on the face of a notice of sale that was served, posted and filed at least 21 days in advance of the purported foreclosure sale.  Thus, Mr. Gonzales had no power to conduct a valid and enforceable foreclosure sale.   There may be evidence that Defendant/Chang, after stepping into the shoes of the lender and beneficiary under the Deed of Trust, intended to make Mr. Gonzales the new substitute trustee.  There may be evidence that Plaintiff/Debtor had actual knowledge of Mr. Gonzalez's eve-of-foreclosure appointment.  But this does not matter. Mr. Gonzales had no statutory authority to conduct a valid foreclosure sale.  The Plaintiff/Debtor and public were not give the required statutory notice of Mr. Gonzalez's identity and address.  The alleged sale to Defendant/Williams was void as a matter of law.  The Real Property remained a part of the bankruptcy estate upon the Bankruptcy Case's filing.

---

[97] *See also In re AMRCO, Inc.*, 496 B.R. 442, 448 (Bankr. W.D. Tex. 2013) (Judge Davis noted that certain equitable arguments made regarding the (lack of) harm to the defaulting debtor by a notice defect in the otherwise lawful foreclosure process would not be considered where there was not strict compliance with the relevant notice provisions of the Texas Property Code).

[98] MATTHEW BACON, A NEW ABRIDGMENT OF THE LAW, 337 (His Majesty's Law Printers, 1766).

Summary judgment is **GRANTED** to the Plaintiff/Debtor, Defendant/Chang, and Defendant/AFNB as to Count 1 of the Amended Complaint, and it is declared that the Debtor/Plaintiff is the owner of the Real Property (subject to Defendant/Chang's lien) and that Defendant/Williams has no claim to the Real Property.

The granting of summary judgment on Count 1 makes Count 2 moot. Thus Count 2 is **DISMISSED** as moot.

**SO ORDERED.**

February 11, 2015.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**